

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

MARELIE VASQUEZ,

                Plaintiff,

- against -

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

------------------------------------------------------------ X

**MEMORANDUM DECISION AND ORDER**

18-CV-1107 (AMD)

**ANN M. DONNELLY,** District Judge.

The *pro se* plaintiff brings this action seeking review of the Social Security Commissioner's decision, after a hearing before an Administrative Law Judge (ALJ), that the plaintiff is not disabled for the purposes of receiving disability insurance benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act. On September 4, 2018, the defendant moved for judgment on the pleadings (ECF No. 11), and on November 13, 2018, the plaintiff opposed the motion by letter (ECF No. 14). For the reasons below, I deny the defendant's motion and remand the case for further proceedings.

## BACKGROUND

The 34-year-old plaintiff submitted her application for disability insurance benefits and Supplemental Security Income on April 20, 2015. (Tr. 13.) The plaintiff, who suffers from cervical dysplasia, chronic pain, interstitial cystitis, vulvodynia, anxiety, depression, insomnia, polyuria, polycystic ovary syndrome, and hypothyroidism, said her disability began on September 28, 2014, when she was fired from her job as a hospital admissions clerk for using the

1

bathroom too frequently and for her absences for bladder surgeries. (Tr. 60-61.) The plaintiff's application was denied on August 19, 2015. (Tr. 13.) ALJ Sommattie Ramrup held a hearing on December 16, 2016, at which the plaintiff, represented by counsel, testified. (*Id.*) The ALJ also heard from a vocational expert. (*Id.*) On April 26, 2017, ALJ Ramrup denied the plaintiff's application, concluding that the plaintiff could still perform sedentary work. (Tr. 13-23.) The Appeals Council denied the plaintiff's request for review on January 11, 2018. (Tr. 1-6.)

The plaintiff makes three challenges to the ALJ's decision. First, the plaintiff disputes the ALJ's conclusion that surgery improved the plaintiff's symptoms. Second, the plaintiff says that there are psychiatric records that were not part of the record before the ALJ. Finally, the plaintiff challenges the ALJ's decision that she had the residual functional capacity (RFC) to perform sedentary work; the plaintiff cites her limited ability to walk or sit for a long time and her frequent need to use the bathroom during a work day. (ECF No. 14.) These arguments have merit, and I address them below.

## DISCUSSION

A district court reviewing a final decision of the Commissioner must determine "whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005). The court must uphold the Commissioner's factual findings if there is substantial evidence in the record to support them. 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citations omitted). While the court must defer to the Commissioner's factual findings when they are "supported by substantial evidence," the court will not defer to the ALJ's determination

"[w]here an error of law has been made that might have affected the disposition of the case." *Pollard v. Halter*, 377 F.3d 183, 188–89 (2d Cir. 2004) (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir.1984)) (internal citations omitted). Thus, "[e]ven if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (quoting *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).

*The Plaintiff's Impairments*

When the plaintiff initially applied for disability benefits, she listed the following illnesses and conditions: cervical dysplasia, chronic pain, interstitial cystitis, vulvodynia, anxiety, depression, insomnia, polyuria, pain bladder syndrome, polycystic ovary syndrome, panic attacks, kidney stones, hypothyroidism and a broken left foot. (Tr. 93-94.) The ALJ concluded that the plaintiff's obesity, interstitial cystitis, and vulvodynia were severe impairments, and that her hypothyroidism, polycystic ovary syndrome, broken left foot, and mental health impairments were not severe or did not meet a listing. (Tr. 16-18.) The ALJ does not appear to have considered whether the plaintiff's cervical dysplasia, chronic pain, insomnia, or kidney stones met or equaled a listing, or affected the plaintiff's RFC. Remand is necessary so that the ALJ can consider these conditions and the extent to which they would have affected the RFC determination.

The ALJ decided that the plaintiff's hypothyroidism and polycystic ovary syndrome were not severe because both conditions "appear[ed] to be stable and managed with no significant or aggressive treatment," and were not associated with "significant symptoms or functional limitations,... complications [or] end-organ damage." (Tr. 16.) The record does not support this conclusion. For example, in April 2016, Dr. Rachel Froehlich treated the plaintiff for both

conditions, noted that the plaintiff had "chronic pain," and prescribed medications for them. (Tr. 365-69.) The plaintiff's medical history is consistent on the subject of "chronic pain;" the plaintiff reported pain at nearly every one of her doctor's appointments and described conditions that could have caused the pain. Under these circumstances, remand is necessary so that the ALJ can seek a doctor's opinion about the severity of the plaintiff's hypothyroidism and polycystic ovary syndrome, and the pain or other symptoms associated with each condition. *See Cassell v. Berryhill*, No. 15-CV-0734, 2018 WL 4158305, at *5 (E.D.N.Y. Aug. 30, 2018) ("At bottom, the ALJ must make 'every reasonable effort' to obtain reports from medical sources to fill gaps in the administrative record." (citing 20 C.F.R. § 416.912)); *see also Martinez v. Massanari*, 242 F. Supp. 2d 372, 378 (S.D.N.Y. January 27, 2003) ("To the extent that the evidence submitted was insufficient for the ALJ to form a conclusion… he was obligated to supplement the record with clarifying evidence.").

Nor does the record support the ALJ's conclusion that the plaintiff's mental health impairments were not severe. Dr. McCormick, a psychologist who examined the plaintiff in July 2015, found that the plaintiff was moderately impaired in the areas of maintaining concentration and attention, performing complex tasks and relating adequately with others, and markedly impaired in maintaining a regular schedule and dealing appropriately with stress. (Tr. 16.) The ALJ gave little weight to Dr. McCormick's opinion because it was "based on a one-time examination and mostly on the complainant's complaints," and was "inconsistent with the clinical record;" the ALJ noted that there were few psychiatric treatment records before 2015, and "none from any mental health specialists and providers since May 2015," when the plaintiff received care from Brooklyn Mental Health Clinic. (*Id.*) In contrast, the ALJ gave great weight to the opinion of the state agency medical consultant, Dr. Selesner, who found that the plaintiff

4

had fewer limitations; the ALJ characterized Dr. Selesner's opinion as "consistent with the mostly unremarkable clinical notes" from Brooklyn Mental Health Clinic, and "based on knowledge of the Social Security Regulations on disability and assessment in functioning." (Tr. 18.)

There were, however, portions of Dr. Selesner's opinions that were consistent with Dr. McCormick's conclusions. In a Disability Determination Explanation for the plaintiff that Dr. Selesner signed on July 23, 2015, he described the plaintiff's anxiety disorder as "severe," and said that the plaintiff had "moderate" difficulties in maintaining social functioning and concentration, persistence or pace, and "mild" restriction of activities of daily living. (Tr. 97-98.) These findings are consistent with the notes from the Brooklyn Mental Health clinic, where the plaintiff was treated between April 2015 to June 2015; these records include observations that the plaintiff "exhibit[ed] symptoms of depression, chronic pain, anxious [sic], and insomnia." (Tr. 637-49.) The ALJ did not refer to these findings in the decision. Accordingly, remand is necessary so that the ALJ can consider these portions of the record. *See Pacheco v. Barnhart*, No. 03-CV-3235, 2004 WL 1345030 at *4 (E.D.N.Y. June 14, 2004) ("[A]n ALJ cannot 'pick and choose evidence in the record that supports [her] conclusions.'" (quoting *Rivera v. Sullivan*, 771 F. Supp. 1339 (S.D.N.Y. 1991))).

If on remand the ALJ finds inconsistencies in the record about the plaintiff's mental health impairments, the ALJ should develop the record to clarify or resolve these inconsistencies. *See Burgess v. Astrue*, 537 F.3d 117, 129-30 (2d Cir. 2008); *Martinez*, 242 F. Supp. 2d at 378. The ALJ should also determine whether there are additional psychiatric records, as the plaintiff claims, and try to get these records.[1] And, because the plaintiff has multiple severe impairments,

---

[1] The plaintiff says she is currently being treated by a psychiatrist named Dr. F. Laurel. (ECF No. 14.)

the ALJ should also consider "the combined effect of all [] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity... throughout the disability determination process." 20 C.F.R. § 404.1523; *see also Duncan v. Astrue*, No. 09–CV–4462, 2011 WL 1748549, at *22 (E.D.N.Y. May 6, 2011) (quoting *Burgin v. Astrue*, 348 F. App'x 646, 647–48 (2d Cir. 2009)); *Hernandez v. Astrue*, 814 F. Supp. 2d 168, 185 (E.D.N.Y. 2011) ("The ALJ's failure to consider the effects of plaintiff's combined impairments in every step of the five-step sequential process . . . requires remand.").

*The ALJ's RFC Determination Concerning Mental Health Impairments*

ALJ Ramrup determined that the plaintiff could perform sedentary work with the following limitations: that she have access to a restroom less than 75 feet away and be limited to "simple, routine tasks." (Tr. 18-19.) The ALJ does not appear to have considered the extent to which the plaintiff's mental health impairments affected her RFC.

In assessing a claimant's RFC, the ALJ must evaluate the "combined impact on a claimant's ability to work, regardless of whether every impairment is severe." *Dixon v. Shalala*, 54 F.3d 1019, 1031 (2d Cir. 1995); *accord Johnston v. Astrue*, No. CV-07-5089, 2008 WL 4224059, at *9 (E.D.N.Y. Sept. 8, 2008) ("the ALJ is required to consider all of plaintiff's impairments regardless of their severity" (citing 20 C.F.R. § 404.1545(a)(2))). Even if "substantial evidence supports the ALJ's finding that [the plaintiff's] mental impairment was nonsevere, it would still be necessary to remand this case for further consideration because the ALJ failed to account [for the plaintiff's] mental limitations when determining her RFC." *Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012); *see also Rousey v. Comm'r of Soc. Sec.*, 285 F. Supp. 3d 723, 740-41 (S.D.N.Y. 2018) ("Although the ALJ's finding that plaintiff's mental impairments were not severe was supported by the record, the ALJ did err in failing to

consider plaintiff's mental impairments in determining plaintiff's RFC and in the hypothetical posed to the vocational expert.") (collecting cases).

In the RFC portion of the decision, the ALJ discussed the plaintiff's physical limitations in connection with her ability to work; the ALJ did not explain how, if at all, the plaintiff's depression and anxiety limited her RFC, or why these conditions were not part of the RFC analysis. And, in the hypothetical posed to the vocational expert during the hearing, the ALJ did not refer to depression or anxiety. (Tr. 84-90.) Remand is appropriate so that the ALJ can consider the extent to which the plaintiff's mental health impairments might affect her RFC, an evaluation that may require additional input from the vocational expert. *See Parker-Grose*, 462 F. App'x at 18; *Rousey*, 285 F. Supp. 3d at 743 (remand is required where the ALJ failed to account for the limitations imposed by plaintiff's non-severe mental impairments); *Schmidt v. Colvin*, No. 15-CV-2692, 2016 WL 4435218, at *13 (E.D.N.Y. Aug. 19, 2016) (same).

*The ALJ's RFC Determination Concerning Physical Impairments*

In determining the plaintiff's RFC, the ALJ focused almost exclusively on the period after the plaintiff's January 2016 surgery; the ALJ decided that the plaintiff had a "greater than 50% improvement in symptoms and significant reduction in urgency and frequency of urination" after two surgeries. (Tr. 19-21.) The ALJ concluded that the plaintiff could not lift or carry more than 10 pounds, stand or walk more than two hours in an eight-hour workday, or do more than "simple, routine tasks." (Tr. 20.) "Greater functional limitations, however, are not supported by the clinical record, which in fact indicates significant (50% or more) improvement in the claimant's condition" after surgery. (*Id.*) However, the ALJ did not make a disability finding for the period between September 28, 2014, and the plaintiff's surgeries in January 2016.

7

Moreover, the record does not support the ALJ's determination that the plaintiff's condition improved.

First, the plaintiff alleged a disability beginning on September 28, 2014, a date that the ALJ accepted as the onset date. (Tr. 15.) The plaintiff did not have the surgeries that the ALJ cites as the source of improvement in the plaintiff's conditions until January 2016. (Tr. 20.) While the ALJ referred to the plaintiff's marked medical history between September 2014 and January 2016, including the multiple medical conditions that led to her surgeries, the ALJ did not determine the extent of the plaintiff's disability during this timeframe. (*See* Tr. 16-19.) Even assuming that the January 2016 surgeries improved the plaintiff's conditions, she could have been disabled for the year and a half before she had surgery. On remand, the ALJ should make a disability determination for the period between September 28, 2014, and January 2016.

Nor is there substantial evidence in the record to support the ALJ's conclusion that the plaintiff had a 50% improvement in her condition after her January 2016 surgeries. The plaintiff's medical records do suggest that there was some post-surgery improvement – for example, the frequency and urgency of urination – but the plaintiff still had bladder pain after surgery. (Tr. 39) (Dr. Yanke records dated 5/17/17: "pt. is having sever bladder spasm daily as well as pelvic and back pain... She has interstim in place and states that this helps with the urgency and frequency.") The plaintiff testified at the hearing and explained in a letter to the Court that her pain got worse after the surgery. (Tr. 72-79; ECF No. 14 ("It has caused me excruciating pain in my upper and lower back making it very difficult for me to be mobile.")) The plaintiff also testified that she could not work for any significant period because of the pain and the pain medication that she takes. (Tr. 78.) Moreover, even though her symptoms improved, she still woke up 12 or 13 times a night to go to the bathroom, and would need to do

8

so frequently throughout the day. (*Id.*; Tr. 472-76 (Dr. Schulz's May 17, 2016 Bladder Problem Implant Questionnaire.)) On remand, the ALJ should consider whether these conditions affect the RFC determination.

Additionally, the record about the plaintiff's RFC is somewhat sparse; the plaintiff's doctors did not give specific opinions about the plaintiff's ability to work or perform daily activities. An ALJ is not permitted to "engage[] in his own evaluations of the medical findings" in order to determine the claimant's RFC. *Henningsen v. Comm'r of Soc. Sec. Admin.*, 111 F. Supp. 3d 250, 271-72 (E.D.N.Y. 2015) ("The ALJ did not cite any medical evidence, and this court found none in the record, to suggest that... plaintiff could form the full range of sedentary work... and thus, the ALJ's determination that plaintiff had the RFC to perform the full range of sedentary work is not supported by substantial evidence and must be reversed."); *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010) ("Because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error."); *see also Legall v. Colvin*, No. 13-CV-1426, 2014 WL 4494753, at *6 (S.D.N.Y. Sept. 10, 2014) ("[T]he ALJ in this case committed legal error in arriving at his RFC determination without citation to any expert medical opinion in support thereof." (citing *Hilsdorf*, 724 F. Supp. 2d at 347)).

While several of the plaintiff's doctors described the plaintiff's symptoms, none gave an opinion about the plaintiff's ability to sit or stand for certain periods of time, carry heavy objects, or walk significant distances. Remand is necessary so that the ALJ can have the benefit of opinions from treating or consulting physicians regarding the plaintiff's physical limitations. *See Henningsen*, 111 F. Supp. 3d at 271-72; *Hilsdorf*, 724 F. Supp. 2d at 347.

## CONCLUSION

Accordingly, for the reasons set forth above, the Commissioner's motion for judgement on the pleadings is denied, and the case is remanded for further development of the record.

**SO ORDERED.**

                                                                     s/Ann M. Donnelly
                                                  _____

                                                  Ann M. Donnelly
                                                United States District Judge

Dated: Brooklyn, New York
        February 21, 2019